Thomas Dimitre SBN 103721
Thomas Dimitre Attorney at Law LLC
PO Box 801
Ashland, OR 97520
Phone:  541 890 5022
Fax:  5412 488 4601
Email: dimitre@mind.net
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# OREGON DISTRICT

# MEDFORD DIVISION

| | |
|---|---|
| KLAMATH FOREST ALLIANCE, a California domestic non profit, APPLEGATE NEIGHBORHOOD NETWORK, an Oregon public benefit non Profit, LUKE RUEDIGER, an individual, and ERIC NAVICKAS, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>TOM VILSACK, SECRETARY OF THE DEPARTMENT OF AGRICULTURE, and UNITED STATES DEPARTMENT OF AGRICULTURE<br><br>Defendants | Case No.:<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>VIOLATION OF THE NATIONAL ENVIRONMENTAL POLICY ACT (NEPA) |

## JURISDICTION

1. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 (federal question), 2201 (injunctive relief), 2202 (declaratory relief), and 28 U.S.C. § 1346 (United States as a defendant).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEFVIOLATION OF THE NATIONAL ENVIRONMENTAL POLICY ACT (NEPA) - 1

The cause of action arises under the laws of the United States, including the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq*.; and the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 *et seq*. An actual, justiciable controversy exists between plaintiffs and defendant. The requested relief is proper under 28 U.S.C. §§ 2201 and 2202, and 5 U.C. 705 and 706.

**VENUE**

2. Venue in this court is proper under 28 U.S.C § 1391. Project area is located in Oregon.

**PARTIES**

3. Plaintiff, Klamath Forest Alliance (KFA), is a California domestic non profit, that has offices, members, volunteers, and employees in both California and Oregon. KFA's mission is to act in the public interest by promoting sustainable ecosystems and communities. The Alliance will establish and develop an educational, scientific and charitable base to collect, produce and distribute public interest material and information concerning but not limited to forestry, economic development, community organizing, housing, land use decision, biodiversity, community health, transportation, education, minerals, fisheries, toxics issues and rural community survival. KFA promotes public involvement and activism.

4. Plaintiff, The Applegate Neighborhood (AN), is an Oregon public benefit non profit that has members, volunteers and employees in Oregon. AN's mission statement is to sustain the integrity of the environment and human communities in the Applegate Valley and surrounding areas through education, collaboration, community activism, stewardship and science. AN promotes wildland conservation, ecological restoration, a sustainable rural economy, and community engagement in federal land management planning.

5. Plaintiff Luke Ruediger has lived his entire life in southwestern Oregon and has been a resident of the Applegate Valley, Oregon for over 20 years. He enjoys the Siskiyou Mountains of southern Oregon and northern California on a regular basis and cherishes both the biological integrity and world-class biodiversity of the region. Mr. Ruediger is author of "The Siskiyou Crest: Hikes, History and Ecology," a hiking and natural history guide for the Siskiyou Crest region including Mt. Ashland and the surrounding watersheds. Luke runs an ecology-based blog about the Siskiyou Mountains, titled "The Siskiyou Crest: Observations, Comments and Perspectives" and has led both botany and ecology hikes in the region since the late 1990's, including the Mt. Ashland area. Currently, Mr. Ruediger works professionally on issues surrounding conservation and environmental stewardship in the Klamath-Siskiyou Mountains of Southern Oregon and Northern California. He intends to continue conducting educational programs, writing about the region, exploring its biodiversity, photographing its scenic values and botanical diversity, recreating in the area, and sharing his love for the region.

6. Plaintiff, Eric Navickas, is a resident of Prospect, Oregon and enjoys and recreates in the Siskiyou Mountains of southern Oregon and northern California on a regular basis.

7. The plaintiffs and members of each of the plaintiff organizations use and enjoy the land managed by the Rogue River National Forest and the Klamath National Forest, including Mount Ashland and the areas in and around the FS 20 road, FS 20a, FS 40S30 and FS 40S30A roads, including Grouse Gap and the surrounding area, for hiking, photographing scenery and rare plants and wildlife, and engaging in other vocational, scientific and recreational activities. Plaintiffs and Plaintiffs' members derive recreational, inspirational, spiritual, scientific, educational and aesthetic benefit from their activities on these public lands in the Rogue River and Klamath National Forests. Plaintiffs and Plaintiffs' members intend to continue to frequently

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEFVIOLATION OF THE NATIONAL ENVIRONMENTAL POLICY ACT (NEPA) - 3

use and enjoy the Mount Ashland area, and the FS 20 road, FS 20a, FS 40S30 and FS 40S30A road areas on an ongoing basis in the future.

8. The aesthetic, recreational, scientific, educational, and spiritual interests of Plaintiffs and Plaintiffs' members will be adversely affected and irreparably injured if defendants paving project goes forward without compliance with environmental laws.

9. These injuries would be redressed by the requested relief.

10. Defendant, Tom Vilsack, is the United States Secretary of the Department of Agriculture.

11. Defendant, Glenn Casamassa, is the Regional Forester for the Pacific Northwest Region of the U.S. Forest Service.

12. Defendant, U.S. Forest Service is a federal agency within the United States Department of Agriculture. Defendants are responsible for ensuring that projects implemented on National Forest System lands comply with NEPA, NFMA and the APA.

**FACTS**

13. On September 14, 2020, Roberto Beltran made a decision titled: FS 20 Road, File Code: 1920, and defined as "routine maintenance and repairs of Forest Service 20 Road, FS 20A, FS 40S30 and FS 40S30A" ("Decision"). The Decision was made under a categorical exclusion ("CE").

14. The Decision authorized the paving of Forest Service 20 Road, FS 20A, FS 40S30 and FS 40S30A ("Roads").

15. The Roads are currently unpaved and dirt surfaced, and have historically been unpaved.

16. The Decision will convert the unpaved Roads to paved roads.

17. The Forest Service declared that the project qualified as a categorical exclusion because it was simply routine maintenance. This is simply not true. The project would pave, for the first time, Forest Service 20 Road, FS20A, FS 40S30 and FS 40S30A. The project does not qualify for a categorical exclusion.

18. Though the project is entitled "Routine maintenance and repairs of Forest Service 20 Road, FS 20A, FS 40S30 and FS 40S30A", the project is intentionally misleading. The project would actually pave these roads that are currently unpaved. This is not a "routine maintenance", "repair", or repaving of existing roads. Instead, it would pave these four roads for the first time. A categorical exclusion is not allowed for such an activity.

19. No scoping, or request for public input was done by the Forest Service for this project.

20. The National Environmental Policy Act ("NEPA") requires federal agencies "to consider every significant aspect of the environmental impact of a proposed action. Second, it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decision making process." 40 C.F.R. 1500.1(a).

21. NEPA and its implementing regulations promulgated by the Council on Environmental Quality require federal agencies to prepare an environmental impact statement ("EIS') for "every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. 4332(2)(C), 40 C.F.R. 1508.11.

22. The primary purpose of an EIS "is to serve as an action-forcing device to insure that the policies and goals defined in [NEPA] are infused into the ongoing programs and actions of the Federal Government." 40 C.F.R. 1502.1.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEFVIOLATION OF THE NATIONAL ENVIRONMENTAL POLICY ACT (NEPA) - 5

23. If the agency does not decide to prepare an EIS from the outset, it must prepare an Environmental Assessment (EA), which must "[b]riefly provide <u>sufficient</u> evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact," as well as "brief discussions of the need for the proposal, of alternatives as required by sec. 102(2)(E), [and] of the environmental impacts of the proposed action and alternatives." 40 C.F.R. 1508.9. <u>See also</u> 40 C.F.R. 1502.9(c)(1)(ii).

24. "NEPA procedures must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken . . . . Accurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA." 40 C.F.R. 1500.1(b).

25. NEPA generally requires federal agencies to prepare an Environmental Impact Statement ("EIS") or an Environmental Assessment ("EA") to evaluate the environmental impacts of proposed major federal actions. 42 U.S.C. 4332(2)(C); 40 C.F.R. 1508.9(a)(1).

26. In narrow situations, neither an EA nor an EIS is required and federal agencies may invoke a "categorical exclusion" ("CE") from NEPA. 40 C.F.R. 1508.4 .

27. A "categorical exclusion" is defined as "a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations." 40 C.F.R. 1508.4.

28. The Forest Service has developed criteria for categorically excluded activities in its "Environmental Policy and Procedures Handbook" ("Forest Service Handbook," "Handbook," or "FSH"). The Handbook is available at http://www.fs.fed.us/im/directives/dughtml/fsh_1.html

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEFVIOLATION OF THE NATIONAL ENVIRONMENTAL POLICY ACT (NEPA) - 6

29. Section 1909.15 of the Forest Service Handbook discusses what constitutes an appropriate use of CE's and specifically documents the agency's list of categorically excluded activities.

30. The Decision cited to 36 C.F.R. 220.6(d)(4) as the reason that the project was appropriate under a CE.

31. 36 C.F.R. 220.6(d)(4) states the following:

> "(a) General. A proposed action may be categorically excluded from further analysis and documentation in an EIS or EA only if there are no extraordinary circumstances related to the proposed action and if:
>
> (4) Repair and maintenance of roads, trails, and landline boundaries. Examples include but are not limited to:
>
> (i) Authorizing a user to grade, resurface, and clean the culverts of an established NFS road;
>
> (ii) Grading a road and clearing the roadside of brush without the use of herbicides;
>
> (iii) Resurfacing a road to its original condition;
>
> (iv) Pruning vegetation and cleaning culverts along a trail and grooming the surface of the trail; and
>
> (v) Surveying, painting, and posting landline boundaries.

32. The road paving that was implemented due to the Decision does not meet any of the exceptions in 36 C.F.R. 220.6(d)(4).

33. In addition, where a project area contains extraordinary circumstances related to the proposed action, the Forest Service may not invoke a CE and instead must prepare an EA or an EIS. The "extraordinary circumstances" that must be considered include, but are not limited to:

  a. Federally listed threatened or endangered species or designated critical habitat, species proposed for Federal listing or proposed critical habitat, or Forest Service sensitive species.

  b. Flood plains, wetlands, or municipal watersheds.

  c. Congressionally designated areas, such as wilderness, wilderness study areas, or national recreation areas.

  d. Inventoried roadless areas.

  e. Research natural areas.

  f. American Indians and Alaska Native religious or cultural sites.

  g. Archaeological sites, or historic properties or areas.

FSH 1909.15, § 30.3 ¶ 2.

34. The project is located entirely in the Mt. Ashland/Siskiyou Peak Botanical Area ("MASPBA").

35. 36 CFR 200.6(b)(1)(i) lists "[f]ederally listed threatened or endangered species or designated critical habitat, species proposed for Federal listing or proposed critical habitat, or Forest Service sensitive species" as extraordinary circumstances requiring documentation.

36. The MASPBA is home to numerous sensitive plant species. Jaynes Canyon buckwheat (*Eriognum diclinum*) is found in about eight sites on the Siskiyou Crest and a few sites in the Marble Mountains. Henderson's horkelia (*Horkelia hendersonii*) is found in about eight sites on the Siskiyou Crest between Mt. Ashland and Dry Lake with the largest population in the world on the face of Mt. Ashland. Finally, the project includes an endemic population of Mt. Ashland Lupine (*Lupinus aridius spp. ashlandensis*). Species such as the Mt. Ashland Lupine, Henderson's horkelia and Jaynes Canyon buckwheat, which all grow on Mt. Ashland are

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEFVIOLATION OF THE NATIONAL ENVIRONMENTAL POLICY ACT (NEPA) - 8

particularly important examples of regionally endemic species and the protection of their habitat in the Mt. Ashland/Siskiyou Peak Botanical Area is extremely important on both a professional and personal level. Additionally, the only population of white bark pine in the Siskiyou Mountains and one of only two populations of subalpine fir are also located near the summit of Mt. Ashland and within the proposed project area. If these species and their extremely limited populations are impacted by project activities, Mr. Ru appreciation, enjoyment and love for the region and its exceptional biodiversity would be permanently harmed. Paving the access road to and through this sensitive area will increase foot traffic, disturbance, and degradation of this unique Botanical Area.

37. Not only does the Botanical Area include a breadth of sensitive high alpine wetlands but the terminus of one of the roads is at the boundary to the City of Ashland's municipal watershed. Increased access to the Ashland Municipal Watershed will exacerbate problems with recreational mountain bike use that already exist.

38. 36 CFR 200.6(b)(1)(ii) lists "[f]lood plains, wetlands, or municipal watersheds" as extraordinary circumstances.

39. The project is adjacent to the Pacific Crest Trail, which is designated as a National Scenic Trail. The paving would cross the trail and parallel it for several miles, increasing noise, automobile traffic and speeds, and degrading the natural experience.

40. 36 CFR 200.6(b)(1)(iii) lists "[c]ongressionally designated areas, such as wilderness, wilderness study areas, or national recreation areas" as extraordinary circumstances. The modest documentation fails to even mention the Pacific Crest Trail that is designated as a National Scenic Trail.

41. The project is also adjacent to the McDonald Peak Roadless Area, an inventoried roadless area, and would degrade the Roadless Area.

42. "Inventoried roadless area or potential wilderness area" are also considered extraordinary circumstances under 36 CFR 200.6(b)(1)(iii), the documentation fails to even mention that the project area borders the McDonald Peak Roadless Area.

## FIRST CLAIM
### Violation of NEPA
### Illegal Use of a Categorical Exclusion

43. Plaintiffs incorporate by reference paragraphs 1 through 42.

44. NEPA requires federal agencies to analyze the foreseeable environmental impacts, including direct, indirect and cumulative impacts, of federal activities –42 U.S.C. § 4332(c)(I); 40 C.F.R. 1508.7.

45. In narrow situations, neither an EA nor an EIS is required and federal agencies may invoke a "categorical exclusion" ("CE") from NEPA. 40 C.F.R. 1508.4.

46. A "categorical exclusion" is defined as "a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations." 40 C.F.R. 1508.4.

47. Each federal agency must develop "specific criteria for and identification of" actions that qualify for a CE. 40 C.F.R. 1507.3.

48. Section 1909.15 of the Forest Service Handbook discusses what constitutes an appropriate use of CE's and specifically documents the agency's list of categorically excluded activities.

49. Even if an action fits within a CE category, the Forest Service "must determine that there are no extraordinary circumstances in which a normally excluded action may have a significant environmental effect" before the agency can forego an EA or EIS. 73 Fed. Reg. 43084, 43091 (2008); see also 36 C.F.R. 220.6(a). Federal agencies are therefore required to "provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect." 40 C.F.R. 1508.4. In promulgating its CE's, the Forest Service has acknowledged that a CE may be used for "only routine actions that have no extraordinary circumstances." 57 Fed. Reg. 43180 (1992). The Forest Service has defined routine as: "the activity will have little potential for soil movement, loss of soil productivity, water and air degradation or impact on sensitive resource values and is consistent with Forest land and resource management plans." 56 Fed. Reg. 19718 (1991).

50. The Forest Service has developed criteria for categorically excluded activities in its "Environmental Policy and Procedures Handbook" ("Forest Service Handbook," "Handbook," or "FSH"). The Handbook is available at http://www.fs.fed.us/im/directives/dughtml/fsh_1.html

51. The Decision stated the following:

> "This action falls within the category identified in 36 C.F.R. 220.6(d)(4) – Repair and maintenance of roads, trails, and landline boundaries, and does not require documentation in a decision memo, decision notice, or record of decision."

52. Yet, 36 C.F.R. 220.6(d)(4) states the following:

> "(a) General. A proposed action may be categorically excluded from further analysis and documentation in an EIS or EA only if there are no extraordinary circumstances related to the proposed action and if:
>
> (4) Repair and maintenance of roads, trails, and landline boundaries. Examples include but are not limited to:
>
> (i) Authorizing a user to grade, resurface, and clean the culverts of an established NFS road;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEFVIOLATION OF THE NATIONAL ENVIRONMENTAL POLICY ACT (NEPA) - 11

    (ii) Grading a road and clearing the roadside of brush without the use of herbicides;

    (iii) Resurfacing a road to its original condition;

    (iv) Pruning vegetation and cleaning culverts along a trail and grooming the surface of the trail; and

    (v) Surveying, painting, and posting landline boundaries. "

There is no provision for repaving unpaved roads in this section.

53.    In contradiction with the Decision, 36 C.F.R. 220.6(d)(4) does not allow for new paving of unpaved roads.

54.    Therefore, Defendants violated NEPA when they incorrectly stated that the Project was routine maintenance and declared that 36 C.F.R. 220.6(d)(4) provided them with an exemption from NEPA. The Project is not routine maintenance, and 36.C.F.R. 220.6(d)(4) does not apply.

55.    Defendants' actions as described above are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. Sec. 706.

56.    Plaintiffs are entitled to their reasonable fees, costs, and expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

**PLAINTIFFS SEEK THE FOLLOWING RELIEF:**

1.    a.    a declaration that the Decision violated NEPA and the APA;

    b.    a declaration that Defendants failed to comply with NEPA and APA in issuing the Decision;

    c.    an injunction enjoining Defendants from undertaking activities related to the Decision, unless and until Defendants have complied with NEPA;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEFVIOLATION OF THE NATIONAL ENVIRONMENTAL POLICY ACT (NEPA) - 12

d. an award to Plaintiffs of their reasonable attorney's fees and costs incurred in this action, pursuant to the Equal Access to Justice Act, 28 U.S.C. Section 2412; and

e. granting Plaintiff such additional relief as the Court deems just and equitable.

Thomas Dimitre Attorney at Law LLC

By: /s/ Thomas Dimitre
_____
Thomas Dimitre
Attorney for Plaintiffs

Dated: February 3, 2022

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEFVIOLATION OF THE NATIONAL ENVIRONMENTAL POLICY ACT (NEPA) - 13